[No. A056105. First Dist., Div. Three. July 22, 1993.]

MATHEW ZAHERI CORPORATION et al., Plaintiffs and Appellants, v. MITSUBISHI MOTOR SALES OF AMERICA, INC., Defendant and Respondent.

---

COUNSEL

Bianco, Brandi & Murphy, Bianco & Murphy, Robert L. Bianco and Lawrence A. Mercer for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Elizabeth A. Grimes and Karen N. Frederiksen for Defendant and Respondent.

Sam W. Jennings, Michael M. Sieving and Howard Weinberg as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

WHITE, P. J.—In this action we consider whether the complaint filed by plaintiffs Mathew Zaheri Corporation, doing business as Hayward Mitsubishi, and Mathew Zaheri was properly dismissed for failure to exhaust their

administrative remedy. We conclude it was and affirm the judgment in favor of defendant Mitsubishi Motor Sales of America, Inc.

## PROCEDURAL HISTORY[1]

On July 12, 1991, plaintiffs filed a complaint for damages. The complaint avers that Mathew Zaheri Corporation, doing business as Hayward Mitsubishi, is an authorized franchisee of defendant. Beginning on or about July 1, 1988, Hayward Mitsubishi performed warranty service and repair of Mitsubishi automobiles pursuant to a written agreement with defendant.

In July 1990, defendant conducted an audit of certain of plaintiffs' warranty service and repair records. As a result of the audit, defendant charged back $137,444.79 of the previously paid warranty claims. Thereafter, defendant caused to be disseminated statements that defendant was "pulling the franchise" because it had found evidence of "massive warranty fraud" which "hit a new record."

Based on these allegations the complaint sets forth six causes of action, two based upon contract and four sounding in tort. The contract causes of action allege assumpsit debitatus and breach of contract; the tort causes of action allege slander, trade libel, and negligent and intentional infliction of emotional distress. Each tort claim is based on statements made by defendant concerning the warranty audit.

Defendant demurred to each cause of action because plaintiffs had failed to exhaust their administrative remedy. Defendant asserted the claims were based upon plaintiffs' dissatisfaction with defendant's chargeback of warranty claims and, accordingly, were within the jurisdiction of the New Motor Vehicle Board (Board). The trial court agreed, sustained defendant's demurrer and dismissed the action.

Plaintiffs timely filed a notice of appeal on December 27, 1991. Thereafter, on or about January 31, 1992, plaintiffs filed a dealer petition and dealer protest with the Board claiming violations under Vehicle Code sections 3050 and 3065.[2] Plaintiffs' petition set forth the factual allegations underlying their superior court cause of action for slander and requested the Board to issue an order compelling defendant to cease and desist making defamatory statements.

---

[1] Pursuant to Evidence Code section 452, subdivision (d) and 459, this court has taken judicial notice of nine documents filed with or issued by the New Motor Vehicle Board. This procedural history makes reference to these documents.

[2] All statutory references are to the Vehicle Code unless otherwise indicated.

DISCUSSION

*Right to Appeal*

██ As a preliminary matter defendant asserts this appeal must be dismissed because plaintiffs invoked the Board's jurisdiction after filing this appeal. Defendant relies on *Sea World Corp.* v. *Superior Court* (1973) 34 Cal.App.3d 494 [110 Cal.Rptr. 232] (*Sea World*) and its progeny for this assertion.

In *Sea World*, an employee of Sea World who had been physically injured filed an application for benefits with the Workmen's Compensation Appeals Board (WCAB) in which she claimed the injury arose out of the course of her employment. She also filed a complaint in superior court in which she alleged Sea World was negligent and she was not working within the scope of her employment when her injury occurred. WCAB obtained jurisdiction of Sea World four days before the superior court obtained jurisdiction. Sea World petitioned for a writ of prohibition to prevent the superior court from proceeding with the trial, claiming that WCAB had a priority of right to determine the threshold issue of subject matter jurisdiction because it was first to obtain jurisdiction over the parties.

The *Sea World* court initially recognized the general rule that where two tribunals have concurrent jurisdiction to determine jurisdiction, the question of which shall have exclusive jurisdiction shall be determined by the tribunal whose jurisdiction was first invoked. (*Sea World, supra*, 34 Cal.App.3d at p. 497.) However, the court then drew a distinction between "subject matter jurisdiction," which may not be waived, and "precedential jurisdiction," which may be waived. (*Id.*, at p. 501.) Observing that Sea World had moved the superior court for summary judgment, the court concluded that Sea World had invoked the jurisdiction of the superior court to make the determination of facts on which subject matter jurisdiction would rest. Since Sea World could have challenged the court's jurisdiction by asserting the prior jurisdiction of the WCAB, Sea World had waived, or was estopped to urge, objection to the jurisdiction which it had invited the court to exercise. (*Id.*, at p. 503.)

The procedural history of this case is significantly different from that in *Sea World*. Plaintiff originally filed this action in superior court and the court made its jurisdictional determination. It was not until that decision was rendered and plaintiffs noticed an appeal from the judgment that they invoked the jurisdiction of the Board.

There is no question this court has jurisdiction to hear the appeal by virtue of Code of Civil Procedure section 904.1. Although the Board may have had

concurrent jurisdiction with the superior court to initially determine the question of jurisdiction, it lacks jurisdiction to review the propriety of the superior court determination. Unlike precedential jurisdiction, appellate courts have exclusive subject matter jurisdiction to review superior court judgments. As stated in *Sea World*, subject matter jurisdiction may not be waived.

*Exhaustion of Administrative Remedy*

■ Plaintiffs contend defendant's demurrer should have been overruled, since the Board lacks jurisdiction over plaintiffs' claims. They assert the Board has only as much jurisdiction as expressly authorized by statute.

■ It is settled that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715]; see also *Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1240 [230 Cal.Rptr. 382] [*Yamaha I*].) Even if the administrative remedy cannot resolve all issues or provide the type of relief the plaintiff desires, the exhaustion doctrine is still favored since it facilitates the development of a complete record, includes administrative expertise and promotes judicial efficiency. (*Ibid.*; *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379].) On the other hand, where the Legislature has not granted an administrative agency a "pervasive and self-contained system of administrative procedure" and the agency possesses no greater expertise to consider the controversy than a judicial forum, exhaustion of the administrative remedy is not required. (See *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 87-88 [276 Cal.Rptr. 130, 801 P.2d 373].)

In *Yamaha Motor Corp.* v. *Superior Court* (1987) 195 Cal.App.3d 652 [240 Cal.Rptr. 806] (*Yamaha II*), the Court of Appeal found the Legislature had created a broad statutory scheme to regulate the franchise relationship between vehicle manufacturers and dealers. (*Id.*, at p. 656.) This view was partially based upon section 3050, subdivision (c) which gives the Board authority to consider "any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle dealer, manufacturer . . . [or] distributor . . . pursuant to Chapter 4 (commencing with section 11700) of Division 5 submitted by any person. . . ." Relying on *Yamaha I*, the court again found a plaintiff's administrative remedy must be exhausted before seeking judicial relief, whether or not the administrative remedy can afford complete relief. (*Yamaha II, supra,* 195 Cal.App.3d at p. 657.)

Plaintiffs' cited authority does not hold otherwise. In *BMW of North America, Inc.* v. *New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980 [209 Cal.Rptr. 50], a dealer objected to the franchisor's establishment of a competitor 15 miles from the dealership. The Board found in favor of the dealer, holding that the franchisor's action was a modification of the franchise agreement. The Court of Appeal reversed the decision of the Board, finding that the franchise agreement was nonexlusive and section 3062 limited the relevant market area to 10 miles. (*BMW, supra,* at pp. 989, 991.) In reversing the Board's decision, the court stated that "an administrative agency has only such power as has been conferred upon it by the constitution or by statute and an act in excess of the power conferred upon the agency is void." (*Id.,* at p. 994.) However, the *BMW* court merely found the Board had exceeded its jurisdiction in admitting parol evidence to modify the express terms of the agreement; the opinion is silent on the exhaustion doctrine.

In *Ri-Joyce, Inc.* v. *New Motor Vehicle Bd.* (1992) 2 Cal.App.4th 445 [3 Cal.Rptr.2d 546], a dealer protested the establishment of a new dealership more than 10 miles from its premises. The Board found the above mentioned *BMW* case controlling and dismissed the protest. The Court of Appeal disagreed, finding the franchise agreement ambiguous. (*Ri-Joyce, supra,* at p. 457.) However, in rendering its decision, the court stated: "To the extent Ri-Joyce may be relying upon an estoppel or perhaps a claim of fraud, the argument is addressed to the wrong forum. The Board is a quasi-judicial administrative agency of limited jurisdiction. [Citation.] It does not have plenary authority to resolve any and all disputes which may arise between a franchisor and a franchisee. The Board's jurisdiction under section 3060 encompasses disputes arising over the attempted termination, replacement or modification of a franchise agreement. Claims arising from disputes with other legal bases must be directed to a different forum." (*Id.,* at p. 455.) The quotation is pure dictum. Moreover, *Ri-Joyce,* like the *BMW* case, never addresses the exhaustion issue.

In *Ray Fladeboe Lincoln-Mercury, Inc.* v. *New Motor Vehicle Bd.* (1992) 10 Cal.App.4th 51 [12 Cal.Rptr.2d 598], the Board allowed a franchisor to terminate a dealership and rejected the dealer's petition seeking damages for the franchisor's asserted wrongful conduct. The dealer petitioned for writ of administrative mandamus, contending the Board did not have jurisdiction under section 3050, subdivision (c) to arbitrate the dispute. The Court of Appeal disagreed. Recognizing an apparent conflict between the *Ri-Joyce* and *Yamaha II* decisions on the question of the Board's jurisdiction, the court noted the *Ri-Joyce* statement quoted above would require franchisees to pursue simultaneous actions before the Board and in state court, would wreak havoc with the exhaustion of remedies doctrine, and would defeat the

public policy which favors resolution of franchise disputes before the administrative agency. (*Ray Fladeboe, supra,* 10 Cal.App.4th at p. 56.)

■ "Whether the exhaustion doctrine is to be applied in a particular instance because of its extreme utility to the court and the agency itself to initially engage administrative expertise, or is to be held inapplicable because of the alleged inadequacy of the administrative remedy, has been determined by a qualitative analysis on a case-by-case basis with concentration on whether a paramount need for agency expertise outweighs other factors." (*Karlin* v. *Zalta, supra,* 154 Cal.App.3d at p. 981; see also *Rojo* v. *Kliger, supra,* 52 Cal.3d at p. 87.) ■ In the instant action, the genesis of the dispute between the parties concerns warranty service charges. Section 3050, subdivision (c) grants the Board authority to consider any matter concerning the activities or practices of persons holding licenses as a new motor vehicle dealer and/or manufacturer. Section 3065 governs warranty reimbursement practices. Thus, it appears an administrative hearing by the Board would facilitate a complete record, include the Board's expertise and promote judicial efficiency. If the Board resolves those factual prerequisites within its area of expertise in plaintiffs' favor, but is unable to afford full common law relief, plaintiffs have exhausted their administrative remedy and may proceed to file a tort claim in court. If, on the other hand, the Board finds against plaintiffs, the Board's decision must be overturned by a grant of a writ of mandate prior to plaintiffs filing a tort action. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410].)

### DISPOSITION

The judgment is affirmed.

Merrill, J., and Werdegar, J., concurred.