Jeannie C. BRIGGS, Appellant,

v.

The ESTATE of Robert B. BRIGGS, a/k/a
R. B. Briggs, Deceased, et al.,
Appellees.

No. 1579.

Supreme Court of Alaska.

Aug. 25, 1972.

Lloyd I. Hoppner, Rice, Hoppner, Blair & Associates, Fairbanks, for appellant.

Peter B. Walton, Walton & Willard, Anchorage, for Edgar H. Burlison and Yukon Service, Inc., appellees.

## OPINION

Before BONEY, C. J., and RABINOWITZ, CONNOR, ERWIN and BOOCHEVER, JJ.

RABINOWITZ, Justice.

This appeal arises out of the superior court's dismissal of appellant Jeannie C. Briggs' complaint against Edgar Burlison and Yukon Service, Inc.

Jeannie Briggs was the wife of the deceased Robert Briggs who was a business

partner of Burleson. All of the stock in Yukon Service, Inc., was in the name of Robert Briggs or Edgar Burlison (50 percent each). In Count I of her complaint, Jeannie Briggs alleged that authority to bring suit against the estate of Robert Briggs derived from Civil Rule 60(b) providing for relief from a final order or proceeding. In regard to the substance of her claim for relief under the first count, Jeannie Briggs asserted that in 1960 Robert Briggs had offered her 25 percent of the stock in Yukon Service if she would assist in establishing the company by serving as the secretary and bookkeeper without pay. This she allegedly did until mid-1962 when she began receiving hourly wages. Jeannie married Robert Briggs in February 1963; thereafter Robert assured her, on several occasions, of her continuing 25 percent interest in Yukon Service, Inc.

On December 31, 1963, Robert Briggs, Jeannie Briggs, Burlison, and Yukon Service, Inc., entered into a buy-sell agreement pursuant to which the company would purchase life insurance on Robert Briggs and Edgar Burlison. The proceeds of the insurance were to be used by Yukon Service to buy back the stock of either when he died.[1] Under the allegations in Count I of her complaint, Jeannie Briggs sought to have this buy-sell agreement declared void and unenforceable due to failure of consideration.[2] Additionally, Jeannie asked for reformation of the buy-sell agreement to permit sale only for the true value of Robert Briggs' stock in Yukon Service at the time of his death. Alternatively, Jeannie requested that in the event the court

did not void or reform the buy-sell agreement, she be awarded one-half of the $104,167.50 paid to the estate of Robert Briggs, pursuant to said buy-sell agreement "since it reflects payment for her 25% of the shares of Yukon Service, Inc." [3]

In Counts II and III of her complaint, Jeannie Briggs asserted that Burlison and Yukon Service conspired to deprive her of her stock interest in Yukon Service to her monetary detriment. By way of relief Jeannie Briggs sought damages against Burlison and Yukon Service because of their actions taken in furtherance of such conspiracy.

Yukon Service and Burlison moved to dismiss the complaint as it related to them. In a memorandum in support of the motion to dismiss, they urged collateral estoppel, operation of the statute of frauds and statute of limitations, and consideration of other facts as grounds for holding that Jeannie Briggs had failed to plead a claim for relief against them. The superior court granted the motion to dismiss without elaboration.

Resolution of the merits of this appeal turns in part on analysis of the probate proceedings held in the estate of Robert Briggs and particularly on the effect of the September 3, 1970, order entered therein by the superior court. Robert Briggs died in 1969. After initiation of probate proceedings, Yukon Service petitioned to require the executor of the Briggs' estate to sell to it all of the stock formerly held by Robert Briggs in return for payment to the estate of $100,000. Jeannie Briggs filed objec-

1. The insurance was to be $100,000 on each life with provision for double indemnity in case of accidental death. An exclusion clause in the policy covering Robert Briggs precluded double indemnity payment under the circumstances of his death. Thus, Yukon Service had only $100,000 to offer for the stock instead of $200,000.

2. In regard to this aspect of the first count, Jeannie Briggs alleged:
 The Agreement clearly calls for maintenance of a $100,000 insurance policy providing for double indemnity in case

of accidental death. This provision was not complied with by Robert B. Briggs and the insurance obtained did not pay double indemnity upon his death.

3. As part of the multifaceted relief sought under Count I, Jeannie Briggs asked that the superior court's order entered in the probate of the estate of Robert Briggs denying all claims which she had against Yukon Service and Burlison for 25 percent of the stock, should be set aside. We will have occasion subsequently to refer in detail to this September 3, 1970, order of the superior court.

tions to Yukon Service's petition. The gist of her objections was that "it would be inequitable and cause an undue hardship upon the estate to attempt to dispose of 153 shares of the present day value of $140,142.68 for the lesser sum of $100,000.00." Jeannie Briggs also filed a document entitled "Declaration of Interest in Stock" in which she in part demanded that the estate make payment to her in full of the $100,000 referred to in the buy-sell agreement for the transfer of the stock owned jointly by and between the deceased and Jeannie Briggs, his wife. On September 3, 1970, Yukon Service's petition for sale of the stock came on for hearing. Jeannie Briggs, Yukon Service, Burlison, and the estate of Robert Briggs were all represented by counsel. At the outset of the hearing, counsel for Jeannie Briggs agreed that Jeannie Briggs did not object to the sale of the stock pursuant to the buy-sell agreement, and further stated that the position of his client was

> that this stock is not owned a hundred percent by the estate, it's owned fifty percent by the estate and fifty percent by her. Therefore, the claim is not technically against the estate but it's I suppose something in the nature of a . . . request for declaratory relief, declaring that she is the owner . . . of half of this property . . . .

This statement was then followed by another in which counsel for Jeannie Briggs related that he did not think he could object to the estate's conveying, pursuant to the buy-sell agreement, whatever interest the estate might have, but he did not want the disposition of the proceeds of the conveyance determined at the hearing.[4] At the conclusion of the September 3, 1970, hearing, the superior court entered an order authorizing the executor to sell the Yukon Service stock. In its findings of fact which were make part of the order, the trial court found in part:

> While not objecting to entry of an order approving the application of Yukon Service, Inc. to purchase for the sum of $104,167.50 the said certificate of stock from the estate, through counsel Jeannie C. Briggs did reserve her right to file and assert such claim as she might have against the estate for one-half of the proceeds of such sale and for one-half of any and all other assets of the estate. No ruling was requested to be made of any such claim, no such claim having been formally filed herein as of this date.

The September 3, 1970, order of the superior court provided in part:

> Any and all claims which Jeannie C. Briggs may have asserted against Yukon Service, Inc., and/or against Edgar Burlison, for the payment of monies due under the said Buy-Sell Agreement should be, and they hereby are, denied; reserving, however, to Jeannie C. Briggs the right to file such claim as she may seek to assert against the estate for a portion of said monies paid to the estate as well as to a portion of any and all other assets of the estate. Should Jeannie C. Briggs file such claim, a further hearing, or hearings, thereon shall be held.

At no time after the entry of this order did Jeannie Briggs move for rehearing or revision of the order. On the other hand, she did file in the probate proceedings a creditor's claim against the estate of Robert Briggs for

> 50% of the stock of Yukon Service, Inc., held by said estate, i. e., 76.5 shares. In

4. This same position was reiterated at several subsequent points in the hearing by counsel for Jeannie Briggs. In counsel's concluding statement at the hearing, he said in part:

> I agree . . . the only interest Jeannie Briggs has, is an interest in making sure that, that portion of the funds which she claims she owns is not dissipated or expended or otherwise lost by the estate . . . and I agree . . . that Jeannie Briggs should file petition requesting transfer to her half of these monies or something in the nature of declaratory judgment from this Court, that she is the owner of half of this property . . . .

the alternative, the undersigned claims one-half of the $104,167.50 said estate is currently holding resulting from the transfer of said stock to Yukon Service, Inc.

Subsequent to the September 3, 1970, order, Jeannie Briggs also filed in the superior court her now questioned complaint against the estate of Robert Briggs, Burlison, and Yukon Service.

In a postscript to their brief in this appeal, appellees Burlison and Yukon Service admit that the four grounds they originally urged in the trial court for dismissal of Jeannie Briggs' complaint are either inapplicable or not dispositive of the issues in this appeal.[5] In this same postscript, Burlison and Yukon Service contend that a fifth ground for dismissal of the complaint could have been raised in the court below, namely, that Jeannie Briggs' independent action cannot be brought under Civil Rule 60(b) to vacate the September 3, 1970, order of the superior court entered in the probate proceeding.[6]

As was mentioned earlier, Jeannie Briggs, in Count I of the complaint in question, alleged in part that her authority to bring suit against the estate of her husband derived from Civil Rule 60(b). Central to Burlison's and Yukon Service's present position on appeal is the contention that the September 3, 1970, order approving the sale of stock to Yukon Service was not a final order and therefore Civil Rule 60(b) does not provide a legal basis for the bringing of an independent action against the estate, particularly where the actual relief sought is vacation of the September 3, 1970, order. Burlison and Yukon Service urge affirmance of the dismissal and that Jeannie Briggs be remitted to the probate proceedings for such rehearing as may be appropriate under Civil Rule 54(b) and Civil Rule 13(f).[7]

■ We are in agreement with the contentions of Burlison and Yukon Service insofar as they relate to the claims for relief asserted under the allegations of Count I of the complaint. Under this count, Jeannie Briggs sought delivery from Yukon Service of 25 percent of the stock of Yukon Service; declaration that the buy-sell agreement was void for failure of consideration; reformation of the buy-sell agreement to allow sale of the stock at its actual

---

5. Burlison and Yukon Service state that the ground of collateral estoppel is abandoned because the probate order of September 3, 1970, was not a final order; that the statute of frauds and statute of limitations arguments are not dispositive of this appeal; and the fact that Jeannie Briggs had filed an affidavit in a prior divorce proceeding declaring that she held no stock ownership in Yukon Service was also not dispositive of this appeal.

6. Civ.R. 60(b) provides in part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding . . . .

7. Rule 1, Probate Rules, provides in part:
The Civil Rules, the basic theory of pleading and practice contained in those rules . . . shall be used as a procedural guide to accomplish the objects of the probate statutes.
Civ.R. 13(f) reads as follows:
When a pleader fails to set up a counterclaim through oversight, inadvertence or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.
Civ.R. 54(b) provides:
When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all of the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

value, and that the state deliver to her one-half of the $104,167.50 paid to it. The resolution of these matters bears on the final disposition of the probate of Robert Briggs' estate. Further, they come within the superior court's probate jurisdiction described in AS 13.15.010.[8] Thus the superior court could have assumed jurisdiction over these issues either as a probate matter or as a matter within its general jurisdiction. In states having separate probate courts, the well-established rule giving exclusive jurisdiction over a controversy to the court among those having concurrent jurisdiction that first takes jurisdiction would apply.[9] Leaving aside the rule's aspects of comity and courtesy [10] which are not common problems in our unified system, the rule's implications for efficient judicial administration are still relevant. When, as in the case at bar, probate proceedings have been initiated and questions ancillary thereto are raised, the superior court, acting in its probate capacity, should continue to exercise its jurisdiction to dispose of such matters.[11]

■ Thus, in the factual context of this case, we have concluded that the trial court's dismissal of the claims for relief alleged against Yukon Service and Burlison under Count I of the complaint was not in error. Civil Rule 60(b) is limited to relief from a final judgment or order. Under Civil Rule 54(b)'s definition, the September 3, 1970, order cannot qualify as either a final judgment or a final order within Civil Rule 60(b). Further, the relief sought under Count I was either sought by or available to Jeannie Briggs in the probate proceedings, and the September 3, 1970, order specifically reserved to her the right to pursue further proceedings in the probate matter in regard to her claim to one-half of the $104,167.50 paid to the estate by Yukon Service.[12] Since the matter of Jeannie Briggs' right to one-half of the proceeds of the buy-sell agreement is still pending before the superior court in the probate of the estate of Robert Briggs, we conclude that the first count was properly dismissed in its entirety as to Yukon Service and Edgar Burlison as this is a ques-

8. AS 13.15.010 provides:
 The superior court has jurisdiction in all testamentary and probate matters to
 (1) take proof of wills;
 (2) grant and revoke letters testamentary, of administration, and of guardianship;
 (3) direct and control the conduct and settle the accounts of executors, administrators, and guardians;
 (4) direct the payment of debts and legacies and the distribution of the estates of intestates;
 (5) order the sale and disposal of the real and personal property of deceased persons;
 (6) order the renting, sale, or other disposal of the real and personal property of minors;
 (7) take the care and custody of the person and estate of a lunatic or habitual drunkard and appoint and remove guardians therefor and direct and control the conduct of the guardians and settle their accounts;
 (8) direct the admeasurement of dower.

9. See, e. g., Taylor v. Superior Court, 47 Cal.2d 148, 301 P.2d 866 (1956);

Browne v. Superior Court, 16 Cal.2d 593, 107 P.2d 1 (1940). We recognized the rule in Theodore v. State, 407 P.2d 182 (Alaska 1965), but declined to apply it in the criminal context there presented.

10. Theodore v. State, 407 P.2d at 186.

11. Our liberal joinder rules already suggest our preference for this method of streamlining judicial proceedings. See, Civ. Rules 13, 14, 18–20, 22.

12. It appears that portions of the September 3, 1970, order are possibly overbroad and unnecessary to the decision of Yukon Service's petition. We refer to that portion of the order which reads as follows:
 Any and all claims which Jeannie C. Briggs may have asserted against Yukon Service, Inc., and/or against Edgar Burlison, for the payment of monies due under the said Buy-Sell Agreement should be, and they hereby are, denied
 . . . . .
 As counsel for Burlison and Yukon Service point out, it is still open to Jeannie Briggs to move for revision, in the probate proceeding, of the September 3, 1970, order.

tion that should be determined in the prior probate proceeding.[13]

 Regarding the dismissal of Counts II and III of the complaint, we have concluded that the dismissal was improper. These counts alleged that Burlison and Yukon Service conspired to deprive Jeannie Briggs of her stock interest in Yukon Service to her monetary damage. Such conspiracy allegations were not in issue in the probate proceeding held in the matter of the estate of Robert Briggs. Jeannie Briggs was not required to assert these conspiracy allegations as a compulsory counterclaim to Yukon Service's petition which sought a court order requiring the executor of Robert Briggs' estate to sell to it Robert Briggs' Yukon Service stock.

Affirmed in part, reversed in part. Remanded for further proceedings in accordance with this opinion.

13. Although only Yukon Service and Burlison moved for dismissal, Count I of the complaint might properly have been dismissed as to the estate of Robert Briggs as well.